**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PETER ROSS,

      Plaintiff,

       v.                              Civil Action No. 12-742 (JEB)

UNITED STATES OF AMERICA,

      Defendant.

## MEMORANDUM OPINION

      More than six years ago, Plaintiff Peter Ross pled guilty to tax evasion resulting from his failure to pay employment taxes on behalf of Spectrum Ltd., an acrylic-furniture company he solely owned.  As a result of the plea, Ross was ordered to serve 60 months of probation and pay $203,651.43 in restitution.  Independent of the plea, he was also assessed approximately $146,000 in civil penalties under 26 U.S.C. § 6672, a provision of the tax code that allows the IRS to hold officers personally liable for certain taxes that the corporation fails to remit.  To secure payment of both the restitution and the 6672 penalties (plus fees and interest), the IRS filed tax liens against Ross's real property.  Following the sale of the property, the liens were released, but Ross, believing he had overpaid, brought this suit seeking a refund of $152,347.41.  The IRS has now moved for summary judgment, contending that no refund is owed.  Agreeing, the Court will grant the Motion.

## I.      Background

      The Court will provide a brief sketch of the relevant employment-tax framework before venturing into the details of Ross's civil and criminal tax liabilities.

A.     Employment Taxes

Under the Internal Revenue Code, an employer is required to remit federal employment taxes to the IRS on a quarterly basis.  See 26 U.S.C. § 3101 et seq.; 26 C.F.R. §§ 31.6011(a)-1(a)(1), .6011(a)-4(a)(1), .6071(a)-1(a)(1).  These taxes include three distinct components: (1) federal income taxes withheld from employees' wages under 26 U.S.C. § 3402(a); (2) FICA (Social Security plus Medicare) taxes withheld from employees' wages; and (3) the employer's FICA tax contribution (matching the employees' contributions).  See Mot. at 3; see also Gessert v. United States, 627 F. Supp. 2d 942, 946-47 (E.D. Wis. 2009) (describing components of employment taxes owed by a corporation).  The first two components are considered to be held in a "special fund in trust for the United States" until they are remitted to the government, see 26 U.S.C. § 7501; Slodov v. United States, 436 U.S. 238, 243 (1978); accordingly, they are designated as the "trust-fund" portion of employment taxes, while the third component is the "non-trust-fund portion."  See 26 U.S.C. § 7512; 26 C.F.R. § 301.7512-1.

To illustrate, if an employee earns $45,000 in wages and $4,000 was withheld in federal income tax, the trust-fund and non-trust-fund portions of the employment tax would be calculated as follows:

|  | Amount |
|---|---|
| **Income Tax Withholdings** | $4,000.00 |
| **Social Security** (12.4 % wages) |  |
| Employee's Share (6.2 % wages) | $2,790.00 |
| Employer's Share (6.2 % wages) | $2,790.00 |
| **Medicare** (2.9 % wages) |  |
| Employee's Share (1.45 % wages) | $652.50 |
| Employer's Share (1.45 % wages) | $652.50 |
| **Total Employment Tax** | $10,885.00 |
| **Trust Fund Portion** | $7,442.50 |
| (Income Tax + Employee's Share of Medicare & Social Security) |  |
| **Non-Trust Fund Portion** | $3,442.50 |
| (Employer's Share of Medicare & Social Security) |  |

The distinction between the trust-fund and non-trust-fund portions of employment taxes is critical, as a separate provision of the tax code, 26 U.S.C. § 6672, provides the IRS with an additional vehicle for collecting the former portion of the tax.  This section "allows the IRS, in effect, to pierce the corporate veil and proceed against individual officers or employees responsible for collecting the offending company's quarterly employment taxes."  United States v. Farr, 536 F.3d 1174, 1177 (10th Cir. 2008); see also United States v. Schroeder, 900 F.2d 1144, 1146 (7th Cir. 1990) ("Section 6672, in effect, gives the United States the ability to collect wayward trust fund taxes not only from an erring business, but also from those individuals responsible for guarding against such an error.").

Specifically, § 6672(a) provides:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to pay a penalty equal to the amount of the tax evaded or not collected or not accounted for and paid over.

The IRS's ability to collect under § 6672 only applies to the taxes that the employer was obliged to withhold on the employees' behalf, not to the non-trust-fund portion of the employment tax. See 26 U.S.C. §§ 3402, 3102, 3301.  While labeled as a "penalty," § 6672 is not punitive insofar as it does not authorize the IRS to collect any amount over and above the withheld tax itself.  See Erwin v. United States, 591 F.3d 313, 319 (4th Cir. 2010) ("Although labeled as a 'penalty,' § 6672 does not actually punish; rather, it 'brings to the government only the same amount to which it was entitled by way of the tax.'") (quoting Turnbull v. United States, 929 F.2d 173, 178 n.6 (5th Cir. 1991)); East Wind Indus. v. United States, 108 Fed. Appx. 723, 727 (3d Cir. 2004).

Interest, however, can accrue on 6672 assessments that go unpaid.  See 26 U.S.C. § 6601(a)

(Treasury Department's general power to collect interest).

Because the IRS may collect payments for the trust-fund portion of a corporation's

liability both from the corporation itself and from the individuals charged with a 6672

assessment, this could conceivably lead to its collecting many times the corporation's original

tax liability.  IRS policy dictates, however, that once an amount equal to the original liability is

in hand, payments in excess will be returned to responsible persons, thus preventing a "double

collection."  USLife Title Ins. Co. v. Harbison, 784 F.2d 1238, 1243 n.7 (5th Cir. 1986); see also

East Wind Indus., 108 Fed. Appx. at 727.

In sum, § 6672 allows the IRS to collect trust-fund portions of a company's unpaid

employment taxes directly from the corporate officers who should have withheld them, as long

as it takes no more than what is owed.  Non-trust-fund portions, however, can be collected only

from the company.

B.    Ross's Civil & Criminal Liability

Spectrum's failure to remit employment taxes to the IRS, coupled with Ross's subsequent

actions to willfully defeat the collection of these taxes, subjected him to both civil and criminal

liability.  The Court will discuss each in turn.

1.    *Civil Liability Under § 6672*

From the Third Quarter of 1998 through the Second Quarter of 2002, Spectrum failed to

submit more than $200,000 in employment taxes to the IRS.  See Defendant's Statement of

Undisputed Material Fact (Def.'s SUMF), ¶ 8.  A breakdown of the corporation's overall

employment taxes, as well as the trust-fund and non-trust-fund portions, is set forth below:

| Table A: Employment Taxes | | | | |
|---|---|---|---|---|
| **Tax Period** | **Total Employment Tax** Income Tax Withholdings + Social Security (12.4% of wages) + Medicare (2.9% of wages) | **Non-Trust-Fund Portion** *Employer's* Share of Soc. Security (6.2% wages) + *Employer's* Share of Medicare (1.45% wages) | **Trust-Fund Portion** Income Tax Withholdings + *Employee's* Share of Soc. Security (6.2% wages) + *Employee's* Share of Medicare (1.45% wages) | Exhibit |
| Q3 1998 Q4 1998 Q1 1999 | $70,081.90 | $19,784.24 | $50,317.64 | 76-M |
| Q2 1999 | $26,466.68 | $7,824.33 | $18,642.35 | 76-L |
| Q3 1999 | $25,104.70 | $7,283.61 | $17,820.99 | 76-K |
| Q4 1999 | $24,698.25 | $6,675.84 | $18,022.30 | 76-J |
| Q1 2000 | $1,418.15 | $431.32 | $986.77 | 76-I |
| Q2 2000 | No documentation submitted for this quarter. | | | |
| Q3 2000 | $7,020.65 | $2,070.35 | $4,950.61 | 76-H |
| Q4 2000 | $13,836.32 | $4,143.89 | $9,692.31 | 76-G |
| Q1 2001* | $12,037.34 | $12,037.34 | n/a | 76-F; 77-F |
| Q2 2001 | $9,134.28 | $2,971.52 | $6,162.70 | 76-E** |
| Q3 2001 | $7,696.61 | $2,496.98 | $5,199.29 | 76-D |
| Q4 2001 | $15,095.92 | $5,041.52 | $10,054.41 | 76-C |
| Q1 2002 | $9,335.08 | $3,154.68 | $6,180.31 | 76-B** |
| Q2 2002 | $11,224.92 | $3,633.21 | $7,591.64 | 76-A |
| Total | $233,150.80 | $77,548.83 | $155,621.32 | |

*While the IRS indicates that no 6672 Assessment was made for this quarter, see Exh. 76-F, and thus provides no breakdown of the trust-fund and non-trust-fund portions, Spectrum failed to remit taxes in the amount of $12,037.34. See Exh. 77-F. The Court has thus noted this amount in the Total Employment Tax column and has placed the entirety of this in the Non-Trust-Fund Portion Column, as no portion of these taxes was ever assessed to Ross under § 6672.

**The exhibits submitted by the IRS contain errors with respect to certain calculations; these errors have been corrected in this Table.

The Court notes that other minor discrepancies result in the totals being off by negligible amounts.

While the total employment taxes owed by Spectrum for this period totaled $233,150.80, Ross could only be personally liable under § 6672 for the trust-fund portion: $155,621.32. See Section I.A, *supra*.

Pursuant to its authority to collect the trust-fund taxes from Ross, the IRS assessed the following "IRC 6672 - Trust Fund Penalty Assessments" against him on the dates set forth below:

| Table B:  6672 Penalties & Interest | | | | |
|---|---|---|---|---|
| Tax Period | Section 6672 Penalty Assessed by IRS* | Interest Accrued (from date of assessment until payment) | Date of Assessment Def.'s SMF, ¶ 1 | Exhibit |
| Q3 1998 Q4 1998 Q1 1999 | $41,212.52 | $14,011.96 | 1/8/2001 | 13 |
| Q2 1999 | $18,642.35 | $7,649.88 | 11/5/2004 | 14 |
| Q3 1999 | $17,821.03 | $7,315.92 | 11/5/2004 | 15 |
| Q4 1999 | $18,022.35 | $7,399.70 | 11/5/2004 | 16 |
| Q1 2000 | $986.80 | $405.16 | 11/5/2004 | 17 |
| Q3 2000 | $4,950.61 | $2,032.64 | 11/5/2004 | 18 |
| Q4 2000 | $9,692.37 | $3,979.53 | 11/5/2004 | 19 |
| Q2 2001 | $6,162.73 | $2,530.31 | 11/5/2004 | 20 |
| Q3 2001 | $5,199.46 | $2,134.82 | 11/5/2004 | 21 |
| Q4 2001 | $10,054.40 | $4,128.18 | 11/5/2004 | 22 |
| Q1 2002 | $6,180.35 | $2,537.57 | 11/5/2004 | 23 |
| Q2 2002 | $7,591.67 | $3,117.04 | 11/5/2004 | 24 |
| Subtotal | $146,516.64 | $57,242.71 | | |
| **Total** | **$203,759.35** | | | |

*A number of the assessment values in this table may vary by less than a dollar from the figures in Table A.  This is so because the data in Table A was culled from the Spectrum tax filings, see Exhs. 76-A - 76-M, while the assessment values in this table are from the 6672 Transcripts.  See Exhs. 13-24.

As expected, the § 6672 assessments in Table B generally track the trust-fund portion of the employment taxes set forth in Table A.  The only assessment that varies substantially is the 1998 Assessment – which is approximately $9,100 lower than the trust fund liability owed – and the IRS states that this discrepancy is a result of a voluntary and timely payment of $15,946.60 by Spectrum toward its employment tax liability before the return was due, approximately $9,100 of which was presumably applied to the trust-fund taxes.  See Mot., Exh. 76-M, n.2. Interest began to accrue on the 6672 penalties from the dates of assessment in 2001 and 2004, and it continued until these assessments were fully paid in 2010.  This interest came to $57,242.71, raising Ross's total § 6672 liability to $203,759.35.  See Table B.

From 2001 through late 2010, Ross made payments towards the 6672 assessments. These payments can be broken down into three categories. The first set of payments, totaling $55,317.93, was made in periodic installments from 2001 through early 2010. The second and most substantial portion of 6672 payments resulted from the sale of property he owned in June 2010. The IRS had placed two tax liens totaling $152,347.41 (one lien for $63,308.43 and the other for $89,038.98) on Ross's property to secure payment of the remaining trust-fund taxes and resulting interest. <u>See</u> Opp., Exh. 10 (Notices of Federal Tax Liens). When the property was sold for $860,000, these liens were released, and IRS records reflect its application of $152,347.41 towards Ross's 6672 liabilities on June 21, 2010. <u>See</u> Table C (highlighted payments); Settlement Statement. The third and final set of payments was made shortly after the sale of Ross's property. These "payments" were not checks submitted by Ross; instead, they were credits to his 6672 accounts from restitution payments made towards Spectrum's taxes and discussed in Section I.B.ii, *infra*. <u>See</u> Exhs. 14 & 15 (transcripts include four entries for 8/30/10 under the code "241: Miscellaneous penalty adjustment – IRC 6672 Trust Fund Recovery Penalty Balance Due to Payment by Related Business Entity"; these credits total $36,837.35).

These payments are set forth in Table C below:

| Table C: 6672 Payments | | | | | |
|---|---|---|---|---|---|
| Tax Period | 6672 Assessments | Interest* | Payments | Payment Date | Exhibit |
| Q3 1998<br>Q4 1998<br>Q1 1999 | $41,212.52 | $14,011.96 | $10,000.00 | 5/7/2001 | 13 |
| | | | $9,674.40 | 5/11/2004 | 13 |
| | | | $18.74 | 5/10/2004 | 13 |
| | | | $17,143.82 | 4/15/2006 | 13 |
| | | | $203.84 | 4/15/2006 | 13 |
| | | | $1,548.72 | 4/7/2008 | 13 |
| | | | $456.45 | 4/7/2008 | 13 |
| | | | $2,772.25 | 5/30/2008 | 13 |
| | | | $1,200.00 | 6/23/2008 | 13 |
| | | | $1,526.06 | 2/11/2009 | 13 |
| | | | $111.65 | 3/5/2010 | 13 |
| | | | $10,662.00 | 4/15/2010 | 13 |
| | | | $3,807.08 | 6/21/2010 | 13 |
| Q2 1999 | $18,642.35 | $7,649.88 | $26,296.61 | 6/21/2010 | 14 |
| | | | $14,613.66 | 8/30/2010 | 14 |
| | | | $7,825.71 | 8/30/2010 | 14 |
| Q3 1999 | $17,821.03 | $7,315.92 | $25,138.03 | 6/21/2010 | 15 |
| | | | $7,427.04 | 8/30/2010 | 15 |
| | | | $6,970.94 | 8/30/2010 | 15 |
| Q4 1999 | $18,022.35 | $7,399.70 | $25,422.05 | 6/21/2010 | 16 |
| Q1 2000 | $986.80 | $405.16 | $1,391.96 | 6/21/2010 | 17 |
| Q3 2000 | $4,950.61 | $2,032.64 | $6,983.25 | 6/21/2010 | 18 |
| Q4 2000 | $9,692.37 | $3,979.53 | $13,671.90 | 6/21/2010 | 19 |
| Q2 2001 | $6,162.73 | $2,530.31 | $8,693.04 | 6/21/2010 | 20 |
| Q3 2001 | $5,199.46 | $2,134.82 | $7,334.28 | 6/21/2010 | 21 |
| Q4 2001 | $10,054.40 | $4,128.18 | $14,182.58 | 6/21/2010 | 22 |
| Q1 2002 | $6,180.35 | $2,537.57 | $8,717.92 | 6/21/2010 | 23 |
| Q2 2002 | $7,591.67 | $3,117.04 | $10,708.71 | 6/21/2010 | 24 |
| **Total** | **$146,516.64** | **$57,242.71** | **$244,502.69** | | |
| | $203,759.35 | | | | |

*For all periods other than the first tax period, this column is exclusively interest.  As Exhibits 13 and 77-M note, however, for the Q3 1998 - Q1 1999 period, in addition to interest, Ross was assessed a $106.00 fee.  See Exhs. 13; 77-M.  Additionally, the Court has relied on the interest set forth in the quarterly transcripts for Ross's 6672 liability, see Exhs. 13-24, rather than on the interest provided in the IRS's summary sheets.  These figures appear to vary, admittedly in quite small amounts, for Q2 1999, Q3 1999 and Q1 2000.  See Exhs. 77A-M.

Combined, Ross's § 6672 payments totaled $244,502.69.  See id.  Because this amount

actually exceeds the assessments and interest owed ($203,759.35), Ross was refunded

approximately $40,000 for overpayments.  See Def.'s SUMF, ¶¶ 6-7; Mot., Declaration of

Suzanne Fawley, ¶ 10; Exhs. 13, 14 & 15 (Trust Fund Recovery Penalty Transcripts for Q1, Q2, and Q3 of 1999).

According to the IRS, Ross's 6672 liabilities have been paid in full and no additional balance remains.[1]

### 2.   *Criminal Liability*

In addition to the civil liability discussed above, Ross was subject to criminal liability as a result of his efforts to prevent the IRS's collection of Spectrum's taxes.  On March 2, 2007, he pled guilty in this District to a one-count Information charging a violation of 26 U.S.C. § 7201 (Tax Evasion) before Judge Richard W. Roberts.  See Exh. 55 (Plea Agreement).  During the plea hearing, Ross admitted that he had failed to remit employment taxes to the IRS from the quarter ending September 30, 1998, and continuing thereafter until the quarter ending September 30, 2002. Id., ¶ 10.  Ross further admitted that he had "knowingly and willfully" made false statements under the penalty of perjury to defeat the collection of outstanding employment taxes by the IRS.  See id.

For this charge, Ross faced a maximum sentence of "five (5) years imprisonment, a fine of up to $250,000.00, the costs of prosecution, a $100.00 special assessment, a three-year term of supervised release, an order of restitution, and an obligation to pay any applicable interest or penalties on fines or restitution not timely made."  Mot., Exh. 55 (Plea Agreement), ¶ 2.  He was ultimately not incarcerated, but was instead sentenced to 60 months of probation, see Opp., Exh. 1 (Criminal Judgment), and he agreed to pay restitution in the amount of "the actual

---

[1] While the IRS transcripts provide support that no balance remains owing on the 6672 penalties, the Court notes two minor discrepancies.  First, the amount that the IRS contends was refunded ($40,641.71) and the amount of the overpayment ($40,748.18) appear to differ by $106.47.  Compare Def.'s SUMF, ¶ 7, with Table C.  Second, while the IRS contends that Ross was refunded $40,641.71, the transcripts it cites do not appear to reflect the $1,000 Q1 1999 refund referenced in the Fawley Declaration.  See Exh. 13 (TFRP transcript for Q1 1999).  Ross, however, does not base his request for a refund on either variance.

[employment] tax of $203,651.43 and the resulting interest." Plea Agreement, ¶ 5. Neither the

plea agreement nor the transcript of the hearing provides additional discussion of the calculation

of this figure, and the IRS does not explain why this number varies from the $233,150.80 figure

set forth in Table A. Regardless of any dispute as to how the total employment tax amount was

calculated, the agreement unequivocally stated that it "does not preclude the Internal Revenue

Service ('IRS') from assessing and determining any additional civil tax, penalties and/or interest

that may be owed by [you]." Id., ¶ 4.

Pursuant to the plea agreement, from August 2007 through June 2010, Ross made regular

payments towards his restitution totaling $35,000. See Exh. 78 (Application of Criminal

Restitution Payments). The bulk of the restitution remained owing, however, and the IRS

imposed an additional tax lien ($167,750.00) on the same property as discussed above to secure

the remaining payments. See Opp., Exh. 11 (Settlement Statement). The amount of the lien is,

for an unknown reason, $901.43 less than the balance still owing on the restitution

($168,651.43). This lien, moreover, was in addition to the two tax liens placed on the same

property to collect the § 6672 penalties. See Section I.B.1, *supra*. Following the sale of the

property and three additional payments totaling $644.88, the United States Attorney's Office for

the District of Columbia certified that the restitution had been paid in full and released the lien.

See Exh. 78 (Application of Criminal Restitution Payments); Exh. 58 (Certificate of Release of

Lien).

The plea agreement did not require the IRS to direct these restitution payments toward

any specific liability; accordingly, the IRS had the discretion to apply them toward sums that it

could not collect from Ross under § 6672, including: (1) the non-trust-fund portion of such taxes;

(2) penalties and fees assessed against Spectrum for its failure to file that were not assessed to

Ross personally; and (3) interest owing on the non-trust-fund portion and the penalties.  See id.

Table D sets forth these liabilities:

| Table D -  Spectrum Taxes, Penalties, Fees & Interest | | | |
|---|---|---|---|
| **Tax Period** | **Non-Trust-Fund Portion**<br><br>*Employer's* Share of Soc. Security (6.2% wages)<br>+<br>*Employer's* Share of Medicare (1.45% wages) | **Penalties & Fees\*** | **Spectrum Interest\*\*** | **Exhibit** |
| Q3 1998<br>Q4 1998<br>Q1 1999 | $19,784.24 | $23,678.01 | $38,493.90 | 76-M, 77-M |
| Q2 1999 | $7,824.33 | $15,350.44 | $29,431.12 | 76-L, 77-L |
| Q3 1999 | $7,283.61 | $10,081.85 | $21,383.95 | 76-K, 77-K |
| Q4 1999 | $6,675.84 | $9,879.25 | $18,712.64 | 76-J, 77-J |
| Q1 2000 | $431.32 | $607.25 | $1,065.95 | 76-I, 77-I |
| Q3 2000 | $2,070.35 | $2,848.25 | $4,449.83 | 76-H, 77-H |
| Q4 2000\*\*\* | $4,143.89 | $2,253.79 | $9,316.27 | 76-G, 77-G, 48 |
| Q1 2001\*\*\*\* | $12,037.34 | $516.35 | $439.28 | 77-F |
| Q2 2001 | $2,971.52 | $3,035.75 | $3,974.32 | 76-E, 77-E |
| Q3 2001 | $2,496.98 | $3,437.99 | $3,956.98 | 76-D, 77-D |
| Q4 2001 | $5,041.52 | $6,038.39 | $8,071.04 | 76-C, 77-C |
| Q1 2002 | $3,154.68 | $3,734.03 | $4,730.73 | 76-B, 77-B |
| Q2 2002 | $3,633.21 | $4,489.97 | $5,257.25 | 76-A, 77-A |
| **Subtotals** | **$77,548.83** | **$85,951.32** | **$149,283.26** | |
| **TOTAL** | **$312,783.41** | | | |

\*These penalties were assessed pursuant to §§ 6651(a)(1)-(2) and 6654.  See Fawley Decl., ¶ 12; Exhs. 77A-M.

\*\*The interest in this column does not include any interest Ross paid towards the 6672 penalties, which is set forth in Table C.

\*\*\*Exh. 77-G states that the penalties and fees for this quarter are $5,574.51; the transcript, however, see Exh. 48, includes only $2,253.79 in penalties and fees.  The Court has used the number from the transcript.

\*\*\*\*As noted in Table A, there was no 6672 Assessment for this quarter; the Court thus placed the entirety of the taxes owed by Spectrum in the "non-trust-fund" column.

While a casual observer may find the Spectrum interest in Table D rather substantial –

especially in contrast to the interest assessed to Ross for the 6672 penalties, see Table C – this

can be explained for several reasons.  First, for Spectrum, interest accrued on both the unpaid tax

itself and on the penalties and fees assessed to Spectrum (totaling more than $85,000).  For Ross,

conversely, interest accrued only on the unpaid tax.  Second, the Spectrum interest began to

accrue from the time the tax became due, whereas the interest on the 6672 penalties only began

to accrue from the date the penalties were assessed.  This means that, for example, the 2Q 1999

unpaid taxes began to accrue interest as early as July 31, 1999, for purposes of Spectrum's

interest, while the interest on Ross's 6672 assessment for the same quarter did not begin to run

until Ross was assessed nearly six years later on November 5, 2004.  See Table B.  And finally,

because a portion of the Spectrum taxes still remain unpaid today – decades after they were due

– interest continues to accrue on them, whereas the 6672 penalties were paid in full in 2010, and

thus interest stopped accruing nearly four years ago.[2]

Because the total of non-trust-fund taxes, penalties, fines, and interest substantially

exceeded the amount of restitution imposed (by more than $109,000), the IRS could direct the

entirety of Ross's restitution payments towards those debts, with no excess funds remaining to

direct towards his 6672 penalties.[3]  Altogether, combining Ross's payments towards the 6672

penalties and his restitution, he paid more than $407,000 to the IRS as a result of his failure to

---

[2] Interest is compounded daily. 26 U.S.C. § 6622(a).  The interest rate is not fixed, but is instead tied to the federal short-term rate.  See 26 U.S.C. § 1274(d)(C)(i).  The interest rate for each calendar quarter is the federal short-term rate for the first month of that quarter, plus three percent, rounded to the nearest full percent.  See 26 U.S.C. §§ 6621(a)(2), (b)(2)(A), and (b)(3).  During the relevant period, the applicable interest rates varied from 3% (October 2010) to 10% (July 2000).  See http://www.raymondjames.com/taxcreditfunds/hist_app_fed.htm (providing historical table of federal short-term rate; to determine interest rate charged on unpaid taxes, add 3% and round to nearest full percent).

[3] While the restitution payments were ultimately directed towards Spectrum taxes, it appears that some were initially applied against the 6672 penalties and then backed out and applied against Spectrum's taxes.  See, e.g., Exh. 14 (2Q 1999 Transcript) (restitution payments under 673 "Payment" code were applied from August 2007 through April 2009 against Ross's 6672 penalty and were then removed under 672 "Removed Payment" code).

remit Spectrum's employment taxes for the five-year period between 1998 and 2002 ($203,860.98 for his 6672 penalties, see Section III.B.1 (payments less refund), *supra*, and $203,296.31 towards his restitution, see Exh. 78).  In contrast, Spectrum generated more than $519,000 in unpaid taxes, interest, and penalties.  See Table B ($203,759.35 in taxes and interest on the trust-fund portion of Spectrum's liability); Table D ($312,783.41 in taxes, interest, and penalties).  The balance remains unpaid, but the IRS is not seeking it from Ross.

    C.    <u>Procedural History</u>

In May 2012, Ross filed this suit seeking a refund of $152,347.41 from the IRS.  <u>See</u> Complaint.  The parties then filed cross-motions for summary judgment.  A hearing was held on March 18, 2013, where the Court denied both motions without prejudice and ordered the parties to file new briefs addressing the numerous issues that were raised during the hearing.  Both have done so, and the IRS's renewed Motion is now ripe.

## II.    Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986); <u>Holcomb v. Powell</u>, 433 F.3d 889, 895 (D.C. Cir. 2006).  A fact is "material" if it is capable of affecting the substantive outcome of the litigation.  <u>See</u> <u>Liberty Lobby</u>, 477 U.S. at 248; <u>Holcomb</u>, 433 F.3d at 895.  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  <u>See</u> <u>Liberty Lobby</u>, 477 U.S. at 248; <u>Holcomb</u>, 433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not

establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When a motion for summary judgment is under consideration, "[t]he evidence of the non-movant[s] is to be believed, and all justifiable inferences are to be drawn in [their] favor." Liberty Lobby, 477 U.S. at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc). On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The nonmovant is required to provide evidence that would permit a reasonable jury to find in its favor. Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the nonmovant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Liberty Lobby, 477 U.S. at 249-50.

## III.   Analysis

At its core, Plaintiff's refund claim hinges on the scope of his obligations to the IRS and how these obligations were affected by his plea agreement. The Court will begin with a brief discussion of the legal framework for evaluating refund claims, then consider the issues surrounding the plea agreement, and conclude by addressing several ancillary challenges Ross raises.

A.    Refund Claims

In his Complaint, Ross states that "[t]his case is brought pursuant to Title 26 of the United States Code for the refund of taxes improperly being withheld by the IRS."  Compl., ¶ 14. District courts have original jurisdiction, concurrent with the Court of Federal Claims, over "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws."  28 U.S.C. § 1346(a)(1).

"In a tax refund case, there is a strong presumption of the correctness of the findings of the Commissioner of Internal Revenue."  Esposito v. United States, 70 Fed. Cl. 558, 562 (Fed. Cl. 2006) (citing United States v. Fior D'Italia, Inc., 536 U.S. 238, 243 (2002)); Dallin ex rel. Estate of Young v. United States, 62 Fed. Cl. 589, 599 (Fed. Cl. 2004).  The taxpayer not only has the burden of rebutting the presumption of correctness, but also of establishing "the amount he is entitled to recover."  United States v. Janis, 428 U.S. 433, 440 (1976) (citing Lewis v. Reynolds, 284 U.S. 281 (1932)).

"To overcome [this] presumption, the taxpayer has the burden of presenting substantial evidence as to the wrongfulness of the Commissioner's determination.  The burden imposed on a plaintiff is both the burden of going forward and the burden of persuasion.  Thus, a plaintiff first must come forward with enough evidence to support a finding contrary to the Commissioner's determination.  Even after satisfying the burden of going forward, a plaintiff must still carry the ultimate burden of proof."  Esposito, 70 Fed. Cl. at 563 (internal quotation marks and citations omitted).

The IRS here has submitted certified transcripts that document the dates and amounts of the relevant assessments, as well as the application of payments thereunder.  See Mot., Exhs. 1-24.  Plaintiff, in contrast, has offered no evidence to rebut these assessments or show how he is entitled to any refund, let alone the $152,347.41 claimed.  Instead, he makes a number of arguments surrounding the IRS's determination of his liability, which the Court will now address.

     B.    <u>Plea Agreement</u>

According to Ross, there are "numerous open questions of fact" involving the plea agreement that preclude summary judgment.  See Opp. at 14.  His complaints stem from three different issues: (1) the scope and coverage of the plea agreement; (2) the manner in which the IRS applied Ross's restitution payments pursuant to the agreement; and (3) the impact of the Order Terminating Probation on Ross's liability.  The Court will address each separately.

     *1.   Scope of Agreement*

Ross initially contends that there are "disputed facts" surrounding the plea agreement, including what taxes were covered by the restitution order.  See Opp. at 4-5.  This dispute can be resolved by a cursory examination of the agreement.  Its unequivocal language makes manifest that the plea resolved only Ross's criminal liability and did not affect his exposure to civil liability related to the unpaid taxes.  See Plea Agreement, ¶ 4 ("this plea agreement does not preclude the Internal Revenue Service ('IRS') from assessing and determining any additional civil tax, penalties and/or interest that may be owed by [you]").

The limited reach of the agreement, moreover, was underscored in various provisions throughout the text:

- "[T]his agreement is binding only upon the Criminal Division of the United States Attorney's Office for the District of Columbia and the Northern Criminal

Enforcement Section of the Tax Division of the Department of Justice.  This agreement does not bind the Civil Division of this Office, any other United States Attorney's Office, nor does it bind any other state, local, or federal prosecutor.  It also does not bar or compromise any civil, tax, or administrative claim pending or that may be made against [Ross]," id., ¶ 21;

- "this agreement, or any judgment, order, release, or satisfaction issued in connection with this agreement, will not satisfy, settle, or compromise [Ross's] obligation to pay the balance of any remaining civil liabilities, including tax, additional tax, additions to tax, interest and penalties, owed to the IRS for the time periods covered by this agreement or any other time period," id., ¶ 6;

- Ross "further agrees to cooperate with the IRS in resolving his personal civil tax liabilities and the civil tax liabilities of Spectrum LTD and Spectrum West," id.; and

- the "offer is binding only upon the Criminal Division of the United States Attorney's Office for the District of Columbia and the Northern Criminal Enforcement Section of the Tax Division of the Department of Justice."

Plea Agreement at 1.

Try as he might, Plaintiff cannot conjure any ambiguity.  Under the plain language of the agreement, Ross agreed to pay "restitution of the actual tax of $203,651.43 and the resulting interest" to resolve his criminal liability.  The agreement was not a global settlement that prevented the IRS from pursuing additional civil taxes, penalties, or interest.  See Hicks v. Comm'r, 102 T.C.M. (CCH) 111, 2011 WL 3240843, at *3-4 (U.S. Tax Ct. July 28, 2011) (where "plea agreement explicitly provided that it 'does not prohibit the United States, any agency thereof, or any third party from initiating or prosecuting any civil proceedings directly or indirectly involving Defendant,'" Tax Court permitted IRS to pursue additional civil penalties above and beyond agreed upon restitution); see also Shah v. Comm'r, No. 99-1469, 2000 WL 125748, at *2 (6th Cir. Jan. 27, 2000) (unpublished opinion) (plaintiffs could be subjected to additional civil tax penalties beyond restitution and fines already imposed in criminal prosecution); Reeves v. United States, No. 05-542, 2007 WL 2300892, at *3-4 (M.D. Ala. Aug.

8, 2007) (where taxpayer's plea agreement made no mention of his civil tax liability, court rejected his argument that plea agreement was a global settlement that discharged his civil tax obligations); Gillum v. Comm'r, 100 T.C.M. (CCH) 562, 2010 WL 5393884, at *1, *6-7 (U.S. Tax Ct. Dec. 22, 2010) (where plea agreement expressly stated it "does not bar or compromise any civil or administrative claim pending or that may be made against the defendant," and was "binding only upon the United States Attorney's Office for the Eastern District of Arkansas and the defendant," IRS was permitted to collect civil tax liabilities beyond restitution).

Because the plea agreement clearly reserved the IRS's right to pursue civil penalties against Ross, it was free to seek the trust-fund taxes under § 6672, in addition to the $203,651.43 in restitution it was authorized to collect pursuant to the agreement. There is, therefore, no dispute of fact relating to the scope of the plea agreement that might preclude summary judgment.

### 2.  *Application of Payments*

Plaintiff further appears to challenge the IRS's application of the bulk of the restitution payments to Spectrum's outstanding employment taxes, rather than to his 6672 assessments. See Opp. at 14. In so arguing, Ross points to no authority – either in the plea agreement or from anywhere else – that dictates where the IRS must direct restitution payments. Courts have held, on the contrary, that the IRS may direct payments "in the best interest of the United States." Concert Staging Serv., Inc. v. Comm'r, 102 T.C.M. (CCH) 315, No. 3050-09L, 2011 WL 4448911, at *8 (U.S. Tax Ct. Sept. 26, 2011) (internal citation omitted); see also Davis v. United States, 961 F.2d 867, 879 (9th Cir. 1992) ("Involuntary payments, like undesignated payments, may be credited as the IRS desires."); In re Tecson, 291 B.R. 199, 200 (Bankr. M.D. Fla. 2003)

("[I]f the payment is made involuntarily, the payments will be allocated in a manner serving the best interest of the IRS.") (internal quotation marks and citation omitted).

In <u>Concert Staging</u>, the Tax Court further observed that the IRS's "practice of prioritizing the payment of non-trust-fund taxes is reasonable because, consistent with the purpose of section 6672, it enables the Commissioner to reach those responsible for the corporation's failure to pay the taxes which are owing." 2011 WL 4448911, at *8 (internal quotation marks and citations omitted). Here, the IRS directed most of Ross's restitution payments to non-trust-fund taxes and penalties assessed to Spectrum (as well as interest on both), and the sum recovered did not even fully satisfy that figure.

The IRS transcripts, furthermore, show the Service was careful not to double count. In other words, when Ross's restitution payments were applied towards Spectrum's employment taxes, any payments directed to the trust-fund portion of Spectrum's liability were subtracted from the balance Ross owed on the 6672 penalties. For example, on August 30, 2010, the IRS applied $37,871.30 of Ross's criminal restitution payments to Spectrum's liability. <u>See</u> Exh. 44. On the same day, the IRS reduced Mr. Ross's 6672 liability for a portion of the $37,871.30 that it attributed to the trust-fund portion. <u>See</u> Exh. 15 (on 8/30/2010, two adjustments – $7,247.04 and $6,970.94 – are credited to Ross's account under code 241 ("Miscellaneous penalty adjustment IRC 6672 Trust Fund Recovery Penalty Balance Due to Payment by Related Business Entity")). Similarly, when Ross made payments towards the 6672 penalties, those amounts were correspondingly removed from Spectrum's outstanding employment taxes. <u>See</u> Exhs. 16, 45 (on June 21, 2010, Peter Ross paid $25,422.05 toward his 6672 liability for Q4 1999 and IRS reduced Spectrum's liability by same amount ("Balance adjusted trust fund recovery cases" for $18,022.35 and $7,399.70)).

In sum, because the IRS was not required to direct the restitution payments to the trust-fund portion of Spectrum's outstanding employment taxes, Ross did not pay the same taxes twice.

### 3.   Termination of Probation

Even less clear is Plaintiff's argument that the IRS's failure to oppose Plaintiff's Renewed Motion for Order Terminating Probation in the criminal action was a waiver of its right to collect penalties.  See Opp. at 5; see also id. at 9 ("The Motion affirmatively stated that at the time the motion was filed Plaintiff has satisfied all corporate and personal obligations to the IRS.").  As already discussed, see Section III.B.1, *supra*, the plea agreement in the criminal proceeding expressly stated that it did not limit the IRS from pursuing civil taxes or penalties, and thus any order terminating restitution liability in the criminal action would have no impact on the separate civil liabilities.  See Plea Agreement, ¶ 6 ("this agreement, or any judgment, order, release, or satisfaction issued in connection with this agreement, will not satisfy, settle, or compromise [Ross's] obligation to pay the balance of any remaining civil liabilities, including tax, additional tax, additions to tax, interest and penalties, owed to the IRS for the time periods covered by this agreement or any other time period").

### C.   Additional Disputes

In addition to the arguments that stem from the interpretation and application of the plea agreement discussed above, Plaintiff raises two additional challenges.

### 1.   Notice

First, Ross contends that there is a factual dispute over whether sufficient notice was provided to him.  See Opp. at 5, 14.  In so arguing, he fails to flesh out with any specificity the notices he believes he was owed or the taxes or assessments to which these notices pertain.  This

argument would fail as a matter of law, however, regardless of how he might frame it.  As the

IRS notes, the Form 4340s it submitted – *i.e.*, Certificates of Assessments, Payments and Other

Specified Matters, see Mot., Exhs. 25-39 – "are presumptive proof that notice of assessment was

sent for Spectrum's employment tax liability, as required by 26 U.S.C. § 6303."  Reply at 9; see

also McCarty v. United States, 929 F.2d 1085, 1089 (5th Cir. 1991) (observing that Forms 4340

"indicat[e] that [taxpayer] had received notice of the assessment and demand for payment").

"Once the Form is provided, the taxpayer must then prove that the assessment is erroneous in

order to prevail."  United States v. O'Callaghan, 500 Fed. Appx. 843, 849 (11th Cir. 2012)

(internal quotation marks and citations omitted).

     As Plaintiff has failed to rebut the presumption of validity necessary to defeat summary

judgment here, he cannot succeed under this theory.  Even if notice had not been sent, however,

Plaintiff would still not be entitled to a refund, as failure to provide notice does not invalidate an

assessment.  See Dallin, 62 Fed. Cl. at 605 ("Inadequate notice . . . will not invalidate an

otherwise valid penalty assessment.") (citing Howell v. United States, 164 F.3d 523, 526 (10th

Cir. 1998)); Brafman v. United States, 384 F.2d 863, 865 n.4 (5th Cir. 1967).  Thus even if Ross

could show that notice was defective, he would not be entitled to a refund.

     *2. Interest*

     Ross also takes issue with the IRS's collection of interest with respect to certain assessed

taxes.  See Opp. at 9-12; see also 4-5.  This half-hearted argument fails for several reasons.  First,

Ross has provided no evidence that the interest reflected in the extensive documentation

provided by the IRS is incorrect.  Second, to the extent that he contends that restitution payments

cannot be directed towards interest on Spectrum's employment taxes, this, too, is incorrect, as

the IRS could lawfully apply them as it chose.  See Section III.B.2, *supra*.  Finally, his claim that

interest was collected "twice" for the second quarter of 2002 is not true: the interest on trust-fund

taxes that was included in Ross's 6672 payments was subtracted from Spectrum's outstanding

employment taxes, so that the trust-fund tax and interest was only collected once.  To be specific,

following the sale of Ross's property, a $10,708.71 payment was applied to Ross's 2Q 2002

6672 penalty ($7,591.67 was the amount of the assessment and $3,117.04 in interest) on June 21,

2010.  See Mot., Exh. 24.  On the same date, the records for Spectrum's employment taxes

reflect that these payments were removed from the outstanding employment taxes for 2Q 2002.

See Mot., Exh. 54; see also Exh. 77-A.

Because Ross has provided no evidence of errors in the interest calculated in relation to

the 6672 assessments, he has not shown that summary judgment is precluded on this ground.

**IV.   Conclusion**

For the aforementioned reasons, the Court will grant Defendant's Motion for Summary

Judgment.  A separate Order consistent with this Opinion will be issued this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  June 14, 2013